PELTON v. TRICO OIL CO. et al.

No. 13354.

Court of Civil Appeals of Texas. Dallas.

Nov. 27, 1942.

Rehearing Denied Dec. 31, 1942.

626

Leo R. Tresp, of Dallas, and Earnest R. Hawkins, of Fort Worth, for appellant.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellees.

BOND, Chief Justice.

Appellant instituted this suit against appellees for damages resulting from alleged fraudulent representation of title to real estate. The history of the transaction is reflected in the appeal of Compton v. Trico Oil Co. et al., Tex.Civ.App., 120 S.W.2d 534, which is referred to and adopted where not related on this appeal.

Appellant alleges and the proof shows in effect, that on September 27, 1930, he entered into verbal negotiation with appellee, M. V. Lester, for the purchase of a two-acre oil and gas lease estate located in, Rusk County, Texas, represented by Lester to be owned and possessed by him and the Trico Oil Company, free of liens and other encumbrances; that he paid Lester for said lease $2,500 cash, and agreed to pay $2,500 in oil or gas first produced from wells to be drilled on said lease; and that, on October 3, 1930, appellees executed to appellant a conveyance, with general title warranty, to the leasehold estate. At the time of the negotiation and sale, appellees were not the record owners of the leasehold; title being in one R. E. Blankenship. Immediately thereafter, on the same day, Blankenship executed an assignment of the lease to Lester for a recited consideration of $10,500 cash and $7,000 to be paid in oil and gas first produced from said wells; and Lester in turn assigned the leasehold to the Trico Oil Company. Prior to the conveyance executed and delivered to H. E. Pelton, appellant herein, these transfers were duly placed of record in Rusk County. During the negotiation and sale, Pelton was represented by an attorney of his choice who advised him, before any consideration was ever paid, that an abstract was essential and, he thought, necessary to show the true condition of the title to the land. Accordingly, Pelton demanded an abstract and Lester agreed to furnish one as soon as it could be obtained from Trico Oil Company. A few days thereafter, an abstract was furnished which was not brought down to date of the conveyance and assignment here involved, hence did not show the encumbrance of $7,000 deferred oil payment retained in the Blankenship-Lester assignment; therefore, evinced no means of showing such encumbrance. However, Pelton testified that he relied on the verbal representations of Lester that he and Trico Oil Company were the owners of the leasehold, free of liens and other encumbrances, therefore exercised no precaution to examine the abstract or the deed records of Rusk County to ascertain the condition of title.

In November, 1930, under similar representations and warranty title as in the first instance, and without knowledge of their falsity, Pelton purchased from Lester and Trico Oil Company another leasehold on 50 feet adjoining the two-acre lease, for consideration of $1,000 cash and $500 payable to Trico Oil Co. out of oil first produced on the lease. This lease was also encumbered with the Blankenship $7,000 oil payment.

The record further shows that in January, 1931, appellant, as he himself testified, became fully aware of the condition of title to the aforesaid two leaseholds; that they were encumbered with the $7,000 oil payment to Blankenship, and that such encumbrance prevented development of the leases for oil and gas, thus causing appellant's damage, actual and exemplary.

In January 1937, appellant filed his suit in cross-action against appellees in the cause of Lolley et al. v. Hyder et al. in the District Court of Rusk County, severed and transferred on a plea of privilege to a district court of Dallas County. The cause was tried to a jury and at the conclusion of plaintiff's testimony, on motion of appellees, a peremptory instruction was given and judgment entered in favor of the defendants.

In the motion for instructed verdict, appellees assigned several salient convincing points, any one of which, we think,

may well be determined as sufficient for the conclusion reached by the trial judge. The trial court assigned no particular reason for the judgment rendered, hence we may well assume that all the points raised in the motion entered into the court's conclusion; however, in 'the disposition we make of this appeal, we deem it unnecessary to discuss all the points raised, and which are made the basis of appellant's assignments; suffice to say, appellant's cause of action is barred by the two and four years statute of limitations, Vernon's Ann.Civ.St. arts. 5526, 5527; and res adjudicata with the final judgment in Compton v. Trico Oil Co. et al., Tex.Civ.App., 120 S.W.2d 534, which suit involved the rescission of the conveyances, based on an alleged breach of title warranty, an inconsistent remedy with the remedy here sought by appellant on the same cause of action. In the Compton suit, H. E. Pelton, appellant here, was the active complainant, asserting and prosecuting the suit in the name of Compton when, in fact, he was then and is now the owner of the leasehold, with no rights asserted by Compton other than as a mortgagee with a lien on the lease as security for debt due and owing to Pelton.

■ It is held under all Texas decisions that a cause of action sound in fraud and deceit is barred by the two years statute of limitation, and that limitation begins to run from the time the party defrauded or deceived knew of the fraud and deceit, or, by the exercise of reasonable diligence could have known of it. Ebberts v. McLean, Tex.Civ.App., 68 S.W. 2d 1077; Steele v. Glenn, Tex.Civ.App., 57 S.W.2d 908. Many authorities could be cited. In the case at bar, appellant knew of the alleged fraud in January, 1931, and having failed to institute suit for six years after the alleged cause of action accrued, appellees' motion for instructed verdict on the issue of limitation alone was sufficient to bar the action, regardless of other grounds assigned; unless it can be said that the statute of limitation was tolled by subsequent promises of Lester that he would cause the Blankenship $7,000 debt and lien to be removed from the title to the leasehold.

■ The evidence to toll the statute is uncontroverted: In January, 1931, Pelton discovered that the title to the leaseholds purchased from appellees was encumbered with the $7,000 oil payments, and, at that time, called Lester's attention to the encumbrance and his representations that the title was free and unencumbered, and demanded removal of the cloud from the title; and that such demand was subsequently made some "forty, fifty or sixty times" during the intervening years until finally this suit was filed. Pelton testified that on such occasion, he demanded of Lester the removal of the liens from his title, Lester promised to secure a release of the Blankenship lien, but "kept putting him off"; and then on March 19, 1932, appellant threatened to institute suit unless the encumbrance was removed.

It must be observed from the record that at no time after appellant was aware of the misrepresentation of title to the land (January, 1931) did he agree to postpone action on the alleged fraud, or, in any manner, obligate himself to forego action to recover his damages. Undoubtedly he could have brought suit at any time after discovery of the fraud and the failure to do so barred his action under the statute. The mere numerous promises of Lester that he would have the encumbrance removed from title, and appellant's acceptance of the promise, without more, would not toll the statute of limitation; especially so, when he told Lester on one occasion, when he made demand on him to remove the cloud, that he would not take his (Lester's) word to remove the lien; and on another, that he was not going to rely upon him any more; that he had promised appellant that before. Manifestly appellant's cause of action was barred by limitation, therefore, the trial court did not err in sustaining appellees' motion for instructed verdict.

■ We will mention briefly the Compton suit in relation to this suit. In 1933, H. E. Pelton was indebted to Compton, his brother-in-law, in the sum of $500, and, as security for the debt, executed to Compton a mortgage or deed of trust lien on the lease estate, in the form of a deed, with title warranty. Shortly after this conveyance, Pelton, for Compton, instituted suit against M. V. Lester and Trico Oil Company on the representation of title as here involved, and sought rescission of the conveyance of account thereof. Pelton admits that he was present in the trial of the Compton suit and fully advised of the action and grounds for recovery; in fact, he was the active force in the suit, gave testimony on behalf of Compton, and testified that

Compton did not own the leasehold and, in effect, was only a lienholder until the $500 due him was paid; then the lease would revert to him. In the trial, he was asked:

"Q. He (Compton) has never been here prosecuting this suit, has he? A. Not that I know of; no.

"Q. You don't have any interest at all in this case at this time, do you? A. The only interest that I might have would be getting back from Compton part of the lease after he gets his money on it. * * *

"Q. You didn't do anything about it, and you transferred it to Compton then on the first day of June, 1933, didn't you? A. If that is what the date is, why, it is right.

"Q. What did Compton do with it at that time? A. He gave me power to straighten it out for him.

"Q. In other words, you warranted it to him on the first day of June, 1933, and at the same time you gave it to him, he gave you the power to straighten out that warranty that you had given him, is that right? A. I told him—I think at that time, I told him there was some trouble on the title."

So, in the present case on the same subject, Pelton also testified:

"Q. Then when you warranted the title to him (Compton), he did not buy the property, did he? A. I never intended that he buy the property.

"Q. Then he did not own the warranty on it did he? A. I don't know what you mean by warranty, but I still contend that he never owned the property.

"Q. All right, he never owned the property? A. No."

Thus it will be seen that Pelton was the aggrieved party in the Compton suit, and being present at its trial and fully advised of its purpose, participating in the prosecution for Compton, and suffering judgment to be rendered therein, he is estopped to assert the same cause of action in another suit in his own name.

■ It is a sound principle of law that co-operation or participation of a nonparty with a party of record, in the prosecution or defense of an action, or assumption of the prosecution or defense of a suit, where the nonparty is pecuniarily interested, directly or indirectly, in the result of the suit, he is in fact, if not in name, a party

to the action, and the judgment rendered is conclusive as to him in a subsequent action by or against him by the opposite party.

We think the record in the Compton case, and the judgment therein, denying the rescission of the conveyance from Lester and Trico Oil Company (120 S.W.2d 534) is res adjudicata to the cause of action here asserted by Pelton against appellees.

We have considered all points raised by appellant and, finding no error, they are overruled. The judgment of the court below is affirmed.

Affirmed.